UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 17-cr-60178-BLOOM

UNITED STATES OF AMERICA,

      Plaintiff,

v.

MARC RANDALL,

      Defendant.

_____/

## ORDER ON MOTION FOR COMPASSIONATE RELEASE

**THIS CAUSE** is before the Court upon Defendant Marc Randall's Motion for Compassionate Release, ECF No. [66]. The Government filed its Response, ECF No. [68], to which Defendant filed a Reply, ECF No. [69]. The Court has carefully reviewed the Motion, all opposing and supporting submissions, any relevant exhibits, the record in this case, the applicable law, and is otherwise fully advised. For the reasons discussed below, the Motion is granted.

## I. BACKGROUND

On November 21, 2017, Defendant agreed to plead guilty to distributing a controlled substance in violation of 21 U.S.C. § 841(a)(1). *See* Plea Agreement, ECF No. [24]. On January 31, 2018, Defendant was sentenced to a term of imprisonment of 72 months, followed by 3 years of supervised release. *See* ECF No. [49]. Defendant is currently housed at FPC Pensacola, a minimum-security federal prison camp in Pensacola, Florida.

Defendant initially filed a *pro se* Emergency Motion for Sentence Reduction Pursuant to Covid-19 Pandemic ("*Pro Se* Motion"), ECF No. [51], on May 19, 2020. The Government filed an initial Response, ECF No. [53] on May 26, 2020. Thereafter, Assistant Public Defender Timothy Day filed an appearance, sought several extensions of time to reply, and filed a new

Motion combined with a reply. *See* ECF No. [66]. In an August 12, 2020 Order, ECF No. [67], the Court denied the *Pro Se* Motion as moot, and construed the Motion filed by Defendant's attorney as the operative Motion. As noted, the Government responded to the Motion, Defendant filed a Reply, and the Motion is now ripe for review.

Defendant requests compassionate release due to the ongoing COVID-19 health crisis, contending that his underlying medical conditions — namely, type-2 diabetes and hypertension — put him at an increased risk of contracting the virus. *See* Mot. at 15. Defendant notes that in other cases in this district, the Government has conceded type-2 diabetes qualifies as an "extraordinary and compelling reason" for the purposes of a sentence-reduction analysis. *See* Mot. at 20 (citing *United States v. Rind*, 18-cr-60323-RNS, ECF No. 47 at 16 (S.D. Fla. July 23, 2020) ("[a]s the defendant does have type 2 diabetes, hypertension this would qualify as an extraordinary and compelling reason")). Defendant also argues that his release is warranted because he poses no danger to the community given his exemplary disciplinary record while incarcerated and his participation in numerous rehabilitative courses. *See id.* at 29-30.

The Government opposes Defendant's Motion, arguing that Defendant has failed to exhaust his administrative remedies, even though Defendant submitted a request for compassionate release in May of this year. *See* Resp. at 9-10. The Government also contends that Defendant has not established "extraordinary and compelling" circumstances to justify a sentence reduction as his medical records evidence he has not treated his diabetes consistently. *See id.* at 16. Finally, the Government argues that Defendant continues to pose a threat to the safety of the community. *See id.* at 17-19.

SARS-CoV-2, the novel coronavirus, and COVID-19, the disease it causes, have spread across the world and have impacted every person's life. The United States is currently reporting

more confirmed cases of COVID-19 and resulting deaths than any other country, with almost 8,834,393 confirmed cases and over 227,000 reported deaths as of October 29, 2020.[1] The COVID-19 pandemic poses a serious danger to society at large. Moreover, COVID-19 poses a higher risk to incarcerated individuals who are unable to practice public health precautions that are otherwise available to the general public, such as social distancing practices.

As a result of this dynamic, unpredictable, and unprecedented situation, Attorney General William Barr has urged the Bureau of Prisons ("BOP") to move vulnerable inmates out of penal institutions and into home confinement, where appropriate. *See* Mem. from Attorney Gen. William Barr for Dir. of Bureau of Prisons re: Increasing Use of Home Confinement at Institutions Most Affected by COVID-19 (Apr. 3, 2020), https://www.justice.gov/file/1266661/download ("Memorandum"). The Memorandum identifies several facilities that have been particularly affected and should be given priority in the BOP's consideration of implementing home confinement, including FCI Oakdale, FCI Danbury, and FCI Elkton. *Id.* at 1. The Attorney General has made the express finding that extant emergency conditions are materially affecting BOP functioning and has directed the BOP to immediately maximize transfers to home confinement for all eligible inmates at the specifically named facilities and other similarly situated facilities where COVID-19 is materially affecting operations. *Id.* The Memorandum further directs the BOP to review all inmates who have COVID-19 risk factors, as established by the Centers for Disease Control and Prevention ("CDC"), to determine their suitability for home confinement, while also emphasizing the importance of protecting the public from individuals who may pose a danger to society, and recognizing the need to avoid over-burdening law enforcement with "the indiscriminate release of thousands of prisoners onto the streets without any verification that those

---

[1] *Cases of Coronavirus Disease (COVID-19) in the U.S.*, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html (last updated Oct. 29, 2020).

prisoners will follow the laws when they are released . . . and that they will not return to their old

ways as soon as they walk through the prison gates." *Id.* at 2-3. Finally, the Memorandum stresses

the need for careful and individualized determinations regarding the propriety of releasing any

given inmate to home confinement and discourages indiscriminate releases. *Id.* at 3.

## II. DISCUSSION

"Generally, a court 'may not modify a term of imprisonment once it has been imposed.'"

*United States v. Pubien*, 805 F. App'x 727, 729 (11th Cir. 2020) (quoting 18 U.S.C. § 3582(c)).

> "The authority of a district court to modify an imprisonment sentence is narrowly
> limited by statute." [*United States v. Phillips*, 597 F.3d 1190, 1194-95 (11th Cir.
> 2010)]. Section 3582(c) of Title 18 provides that the district court may not modify
> a defendant's imprisonment sentence except: (1) if the Bureau of Prisons files a
> motion and extraordinary or compelling circumstances warrant modification or if
> the defendant is at least 70 years old and has served 30 years in prison; (2) if the
> modification is expressly permitted by statute or Federal Rule of Criminal
> Procedure 35; or (3) if the defendant's original sentencing range has subsequently
> been lowered as a result of an amendment to the Guidelines by the Sentencing
> Commission. 18 U.S.C. § 3582(c).

*United States v. Shaw*, 711 F. App'x 552, 554-55 (11th Cir. 2017); *see also United States v.*

*Celedon*, 353 F. App'x 278, 280 (11th Cir. 2009); *United States v. Diaz-Clark*, 292 F.3d 1310,

1316-18 (11th Cir. 2002). Thus, "[t]he law is clear that the district court has no inherent authority

to modify a sentence; it may do so only when authorized by a statute or rule." *United States v.*

*Rivas*, 800 F. App'x 742, 745 (11th Cir. 2020) (quoting *United States v. Puentes*, 803 F.3d 597,

605-06 (11th Cir. 2015)); *see also United States v. Llewlyn*, 879 F.3d 1291, 1296-97 (11th Cir.

2018) (quoting *Dillon v. United States*, 560 U.S. 817, 827 (2010)).

Defendant seeks relief under the compassionate release provision, § 3582(c)(1)(A), which

states:

> (c) Modification of an imposed term of imprisonment.— The court may not modify
> a term of imprisonment once it has been imposed except that—
> (1) in any case—

> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) [18 U.S.C. § 3553(a)] to the extent that they are applicable, if it finds that—
>
> > (i) extraordinary and compelling reasons warrant such a reduction . . . .
> > . . . .
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A)(i).

Under the relevant Sentencing Guidelines policy statement, the Court "may reduce a term of imprisonment . . . if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent they are applicable, the court determines that . . . extraordinary and compelling reasons warrant a reduction." U.S. Sentencing Guidelines Manual § 1B1.13 (U.S. Sentencing Comm'n 2018). The Sentencing Guidelines add that the Court should reduce a sentence only if the "defendant is not a danger to the safety of any other person or to the community." *Id.*

> Section 3582 sets out the order in which this Court should analyze a criminal defendant's entitlement to a sentencing reduction. *First*, when the defendant brings the motion himself, the Court must ascertain whether he "has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or [whether there has been a] lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(a). *Second*, the Court should "consider[] the factors set forth in section 3553(a) to the extent that they are applicable." *Id. Third*, the Court should turn to the "extraordinary and compelling reasons" test, as outlined in U.S.S.G. § 1B1.13 cmt. n.1. And *fourth*, the Court should determine whether the defendant poses a "danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." *Id.*

*United States v. Stuyvesant*, No. 09-60184-CR, 2020 WL 1865771, at *2 (S.D. Fla. Apr. 14, 2020).

Thus, in order to grant Defendant's request pursuant to § 3582(c)(1)(A), the Court must: (1) find that Defendant has exhausted his administrative remedies with the BOP; (2) weigh the relevant

§ 3553(a) factors; (3) conclude that extraordinary and compelling reasons warrant compassionate release in this case; and (4) determine that Defendant is not a danger to the community. Moreover, Defendant bears the burden of establishing that compassionate release is warranted. *See United States v. Hamilton*, 715 F.3d 328, 337 (11th Cir. 2013) (explaining that "a defendant, as the § 3582(c)(2) movant, bears the burden of establishing that" compassionate release is warranted, but that, even where a defendant satisfies this burden, "the district court still retains discretion to determine whether a sentence reduction is warranted").

### A. Exhaustion of Administrative Remedies

The Government argues that Defendant failed to exhaust his administrative remedies prior to filing this suit. *See* Resp. 9-13. The Government acknowledges that Petitioner submitted a request for compassionate release in May of 2020. *See* Resp. at 9. Nevertheless, the Government avers the request "was treated as a request for release into home confinement," *id.*, instead of a motion for reduction of sentence because the request failed to comply with Bureau of Prisons Program Statement 5050.50.

Program Statement 5050.50 refers the reader to 28 C.F.R. section 571.61(a), which requires requests for a motion under 3582(c)(1)(A) shall be submitted to the Warden and shall include: "(1) [t]he extraordinary or compelling circumstances that the inmate believes warrant consideration [and], (2) [p]roposed release plans, including where the inmate will reside, how the inmate will support himself/herself, and, if the basis for the request involves the inmate's health, information on where the inmate will receive medical treatment, and how the inmate will pay for such treatment." The Government insists that Defendant's May 25, 2020 Request was defective because it did not include a release plan. *See id.* at 9-10.

Defendant submitted three separate requests in support of his Motion. The first, dated May 25, 2020, stated that "I have diabetes and high blood pressure and high cholesterol. Could you please consider me for compassionate release due to COVID-19." ECF No. [72-1] at 1 (filed under seal). In response, Defendant was told that eligibility was being determined by administrative staff and encouraged him to follow up with his unit team. *Id*. The second, dated May 29, 2020, stated that Defendant has checked and is not on the medical list and requested again that he be considered based upon his high blood pressure, cholesterol, and diabetes. *Id.* at 2. In response, Defendant was told again that "[a]ll inmates eligible for early release are currently under review. The final determination is done by administrative staff. Health services staff have no control as to the final determination. You may follow up with your unit team." *Id.* In his third request, which appears to be dated July 22, 2020, Defendant stated, "I asked for relief on my request to the warden because of my medical problems. Diabetes, high blood pressure, high cholesterol. I am an at risk person for COVID-19. The numbers are still rising and I have not been considered for release. Help me please." *Id*. at 3. Defendant indeed did not specify a proposed release plan in any of his requests.

Defendant argues that the Government "cites *no* authority for [the] novel argument," that Defendant must have included a release plan with his request and in any event, "the Court is not bound by BOP policy." Mot. at 3, 5. The Court agrees. The release-plan requirement is set forth in 28 C.F.R. section 571.61(a), which states that "a request for a motion under . . . 3582(c)(1)(A) shall be submitted to the Warden," and include (1) the extraordinary or compelling circumstances warranting consideration, and (2) the proposed release plan. Thus, the regulation speaks to the requirements for a request to the warden, but it does not otherwise speak to an inmate's ability to file a motion for compassionate release before the Court.

*United States v. Schumack*, is persuasive in this instance. No. 14-80081-CR, 2020 WL 4333526, at *2 (S.D. Fla. June 11, 2020). First, the court there found that a letter written by the defendant's daughter qualified as a proper request for compassionate release — and was sufficient to begin the 30-day exhaustion period — even though it did not "specifically utilize the phrase 'compassionate release[.]'" *id.*at *2. Here, Defendant's first request specifically requests compassionate release. The Court will not construe the fact that BOP may have treated his request as a request for home confinement against him. Second, in *Schumack*, the Court noted that the "[d]efendant's daughter is a lay person, not legal counsel, and her correspondence should be liberally construed." The same principle applies here. Defendant had no notice that he was supposed to include a proposed release plan in his request, and furthermore, despite three separate requests, BOP did not inform him of any such requirement.

Moreover, although the statute imposes an exhaustion requirement, the United States Supreme Court has held that even so, an exception exists where "the interests of the individual weigh heavily against requiring administrative exhaustion." *McCarthy v. Madigan*, 503 U.S. 140, 146 (1992). One such exception occurs when "requiring resort to the administrative remedy may occasion undue prejudice to subsequent assertion of a court action. Such prejudice may result, for example, from an unreasonable or indefinite timeframe for administrative action." *Id*. at 146-47. In this case, requiring that Defendant comply with regulatory requirements at this juncture would result in unnecessary additional delay, especially if BOP ultimately denies his request, or fails to respond within thirty days.

### B.  Extraordinary and Compelling Circumstances

The Court next considers the substantive factors bearing upon Defendant's request. The Government first argues that Defendant fails to present extraordinary and compelling circumstances meriting a reduction in sentence. The Court disagrees.

Defendant's medical records show that he suffers from type 2 diabetes and hypertension, *see* Medical Records, ECF No. [66-1] at 19 — and the Government concedes that Type 2 diabetes places an individual at a higher risk for severe illness from Covid-19, *see* Resp. at 2. Nevertheless, the Government insists that because Defendant has "repeatedly been noncompliant with prescribed medical treatments," has declined to take the flu vaccine, and has not been exposed to Covid-19, his medical conditions do not meet the "extraordinary and compelling" standard.

Defendant points out that the Government has previously conceded that type 2 diabetes "would qualify as an 'extraordinary and compelling reason.'" Brief of Gov't, ECF No. [47] at 16, *United States v. Rind*, No. 18-cr-603323 (S.D. Fla. filed Nov. 27, 2018). Indeed, the Government has acknowledged the same before other courts in this district, including this one. *See United States v. Feucht*, ---F. Supp. 3d ----, 2020 WL 2781600, at *3 (S.D. Fla. May 28, 2020) ("The Government agrees that the defendant's serious medical condition (diabetes) presents an extraordinary and compelling reason that would allow compassionate release under the statute and guideline policy statement." (internal quotation marks and docket citation omitted); *United States v. Brown*, No. 14-cr-60161, 2020 WL 5116781, at *4 (S.D. Fla. Aug. 31, 2020) ("The Government also affirms that, pursuant to updated internal guidance from the DOJ, inmates such as Defendant who present certain CDC risk factors, including Type 2 diabetes and hypertension, automatically establish extraordinary and compelling circumstances." (citation and footnote call number omitted)). As such, the Government cannot credibly argue that this Defendant's health conditions

fail to constitute extraordinary and compelling circumstances. The Court will therefore hold the Government to its concession.

As to Defendant's noncompliance with treatment, the Government points to only two instances of noncompliance, occurring one year apart. *See* ECF No. [66-1] at 12 (May 5, 2020 record stating Defendant was non-compliant with his mediation); *id.* at 67 (April 30, 2019 record stating the provider counseled Defendant on his "non-compliance with mediation"). This is not a case in which Defendant's noncompliance was chronic. More importantly, the Government does not present the Court with any authority stating that a Defendant's occasional non-compliance with medication, or refusal to take a flu vaccination, weighs against a finding of extraordinary and compelling circumstances, especially where the Government has previously conceded that specific health conditions satisfy the standard.

Based on the foregoing, Defendant's medical conditions qualify as "extraordinary and compelling" for the purposes of the reduction of sentence analysis. Thus, the Court proceeds to the section 3553(a) factors.

### C.  § 3553(a) Factors

The Government maintains that Defendant's request is unwarranted because the relevant section 3553(a) factors weigh against his release. Defendant disagrees and points to his lack of disciplinary history and his participation in rehabilitative programming while in custody.

The applicable sentencing factors under § 3553(a) include:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed—
>     (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>     (B) to afford adequate deterrence to criminal conduct;
>     (C) to protect the public from further crimes of the defendant; and

    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for—

    (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . . .

. . . .

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

The Court acknowledges at the outset that Defendant's underlying offense is undoubtedly serious. Further, at the time of sentencing, the Court concluded that a term of imprisonment of 72 months was an appropriate punishment for Defendant's conduct given the section 3553(a) considerations. *See* Judgment, ECF No. [50]. Nonetheless, this does not end the Court's inquiry.

> Because a defendant's sentence reflects the sentencing judge's view of the [section] 3553(a) factors at the time of sentencing, the time remaining in that sentence may — along with the circumstances underlying the motion for compassionate release and the need to avoid unwarranted disparities among similarly situated inmates — inform whether immediate release would be consistent with those factors.

*United States v. Pawlowski*, 967 F.3d 327, 331 (3d Cir. 2020).

To date, Defendant has served 38 of his 72-month sentence, or approximately 53%, during which time he has worked toward obtaining his GED, completed courses in construction fundamentals and parenting, and completed the Bureau of Prison's non-residential drug program. *See* ECF No. [66] at 30. Moreover, Defendant is currently housed in a minimum-security facility, and has maintained a perfect disciplinary record during his time in custody. *See id.* at 2. Contrary to the Government's position, the Court finds that these rehabilitative efforts weigh heavily in favor of Defendant's release. *See Brown*, 2020 WL 5116781 at *5 (granting motion for compassionate and noting the defendant had "participated in numerous rehabilitative programs and classes, worked toward obtaining his GED, received good work performance ratings from his

supervisors at his job in the prison bakery[,] . . . [was] housed in a minimum-security facility and [had] maintained a perfect disciplinary record during his time in custody.").

Additionally, the Court considers these factors in the context of Defendant's medical conditions and the extraordinary and compelling circumstances in this case. "When the Court sentenced [the defendant], the Court did not intend for that sentence to 'include incurring a great and unforeseen risk of severe illness or death' brought on by a global pandemic." *United States v. Zukerman*, No. 16 CR. 194 (AT), 2020 WL 1659880, at *6 (S.D.N.Y. Apr. 3, 2020) (quoting *United States v. Rodriguez*, 03 Cr. 271-1, 2020 WL 1627331, at *12 (E.D. Pa. Apr. 1, 2020)). Upon consideration of the entire record in this case, and in light of the sentence that Defendant has already served, the Court concludes that a sentence reduction would not be inconsistent with the goals of sentencing. *See United States v. Scott*, No. CR 1:02-00241-01, 2020 WL 4905749, at *3 (S.D. W. Va. Aug. 19, 2020). As such, the applicable § 3553(a) factors weigh in favor of granting Defendant's Motion.

As to whether Defendant poses a danger to the safety of the community, section 3142(g) sets forth the relevant factors:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
> (2) the weight of the evidence against the person;
> (3) the history and characteristics of the person, including—
>> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release . . . .

18 U.S.C. § 3142(g). "The factors listed in 3142(g) are largely duplicative of those in 3553(a)." *United States v. Martin*, No. CR 98-178, 2020 WL 3960433, at *6 (E.D. Pa. July 13, 2020) (quoting *United States v. Salvagno*, No. 02-51, 2020 WL 3410601, at *7 (N.D.N.Y. Apr. 23, 2020)).

The Court agrees with Defendant that he no longer poses a danger to the safety of the community due to his exemplary disciplinary record while in custody and his significant rehabilitative efforts. Moreover, Defendant is already housed in a minimum-security facility.

The Court commends the Defendant on his progress and positive development exhibited while in custody and his efforts toward self-improvement. These rehabilitative efforts, as explained above, weigh in favor of Defendant's request for release. *See United States v. Williams*, No. 3:04CR95/MCR, 2020 WL 1751545, at *3 (N.D. Fla. Apr. 1, 2020) (concluding that, "given [Defendant's] age, serious health problems, the substantial amount of time he has already served, and his exemplary prison record, factors which are now a part of his history and characteristics, the Court finds that the risk of him engaging in further criminal conduct is minimal and can be managed through . . . the terms of his supervised release").

To be sure, Defendant's criminal history is extensive. The Presentence Investigation Report in this case details Defendant's lengthy criminal history, including twenty-six arrests and three drug convictions. *See* ECF No. [44] at 6-18 (Presentence Investigation Report discussing Defendant's criminal history and convictions). However, it is worth noting that Defendant has no convictions for violent crimes and his most serious drug offenses occurred more than twenty years ago, when defendant was under the age of twenty. *See id.* In this respect, the Court finds *Brown* instructive. *See id.*, 2020 WL 5116781 at *5 (granting motion for compassionate release despite criminal history including possession of stolen property and burglary tools, theft, grand theft auto, burglary, retail theft, trespassing, attempted burglary, loitering, strong arm robbery, resisting arrest

without violence, battery, aggravated assault, criminal mischief, drug charges, and carjacking because most of the conduct was for acts committed when the defendant was a minor.)

In the Court's view, Defendant's more recent conduct is a better indicator of the risk he currently poses to the safety of the community, and this more recent behavior weighs heavily in favor of his release. Moreover, any concerns regarding Defendant's possible recidivism upon release can be addressed through his three-year term of supervised release. *See Johnson*, 2020 WL 1434367, at *5 (noting that, in light of the relevant factors, "the Court does not believe that Defendant is likely to recidivate or that he would otherwise pose a danger to the community. Moreover, the Court finds that any potential risk to the community can be managed by a term of supervised release." (citing *United States v. Schmitt*, No. CR12-4076-LTS, 2020 WL 96904, at *5 (N.D. Iowa Jan. 8, 2020))); *see also Williams*, 2020 WL 1751545, at *3.

In addition, Defendant has presented the Court with a concrete release plan, which Defendant's counsel asserts he has confirmed. If released, Defendant plans to reside with his aunt, Estella Brown, who is prepared to receive him at her home, where she has resided for the last twenty-five years. In addition, counsel asserts that he has confirmed with each individual that Defendant may rely upon Ms. Brown, his aunt Jeanette Johnson, his godmother Belinda Jackson, and his ex-wife Suzzane Randall for emotional, spiritual, and financial support. Thus, the Court does not find that Defendant would pose a danger to the community if released.

The Court determines that Defendant has sufficiently satisfied each of the compassionate release considerations. Therefore, Defendant's Motion is granted, subject to the conditions set forth below.

## III. CONCLUSION

It is **ORDERED AND ADJUDGED** as follows:

1. Defendant's Motion, **ECF No. [66]**, is **GRANTED**.

2. Defendant's term of imprisonment is reduced to **TIME SERVED** as of the date of this Order. The Defendant shall be placed on supervised release consistent with his previous Judgment and sentence, ECF No. [50]. All previous conditions imposed in the Judgment remain in full force and effect, with a special supervised release condition that he is placed on home confinement, as set forth below:

   a. **<u>Home Detention with Electronic Monitoring</u>** – Defendant shall participate in the Home Detention Electronic Monitoring Program for a period of **<u>6 months</u>**. During this time, Defendant shall remain at his place of residence except for employment and other activities approved in advance: work, medical appointments, church, and provide the U.S. Probation Officer with all requested documentation. Defendant shall maintain a telephone at his place of residence without "call forwarding," "call waiting," a modem, "caller ID," or "call back/call block" services for the above period. Defendant shall wear an electronic monitoring device and follow the electronic monitoring procedures as instructed by the U.S. Probation Officer. Defendant shall pay for the electronic monitoring equipment at the prevailing rate or in accordance with ability to pay.

3. Defendant's counsel shall work with the United States Probation Office to implement the approved plan of release as soon as possible.

4. The Federal Bureau of Prisons is directed to release Defendant to the custody of his aunt Estella Brown immediately after the United States Probation Office approves his release plan. Defendant is responsible for arranging his own transportation to

Case No. 17-cr-60178-BLOOM

Ms. Brown's residence at 100 N.W. 18 Street, Pompano Beach, Florida 33060 and, once released, must proceed directly there to quarantine for fourteen days.

5.   Defendant must report via telephone to the U.S. Probation Office at (305) 523-5403 in the Southern District of Florida **within forty-eight (48) hours** of his release from BOP custody.

**DONE AND ORDERED** in Chambers at Miami, Florida, on November 2, 2020.

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record

Marc Randall, *pro se*
16341-104
Pensacola FPC
Federal Prison Camp
Inmate Mail/Parcels
Post Office Box 3949
Pensacola, FL 32516